UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| RUDOLPH MCCOLLUM,<br><br>                           Plaintiff,<br><br>    v.<br><br>GENCO INFRASTRUCTURE SOLUTIONS and TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, LOCAL 527,<br><br>                          Defendants. | Action No. 3:10−CV−210 |

MEMORANDUM OPINION

This matter is before the Court on Transport Workers Union of America, AFL-CIO, Local 527's ("Local 527") Motion to Dismiss (Docket No. 10). For reasons stated below, the Court GRANTS Local 527's Motion to Dismiss. The Court dismisses McCollum's LMRA claim with prejudice. Contrary to Local 527's request, however, the Court DISMISSES McCollum's ADEA claim without prejudice.

I. Introduction

McCollum, a seventy-three year-old former bus driver for GENCO Infrastructure Solutions ("GENCO"), brings a "hybrid" Labor Management Relations Act ("LMRA") claim against his employer, GENCO, and union, Local 527. This claim requires McCollum to prove his employer breached its collective bargaining agreement with the relevant union and his union breached its duty to represent McCollum fairly. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). McCollum alleges GENCO fired him in violation of the LMRA and the

1

Age Discrimination in Employment Act ("ADEA"). He further alleges Local 527 violated the LMRA and ADEA by failing to pursue his grievance against GENCO. The claims against Local 527 are the subjects of this motion.

According to the Amended Complaint, GENCO fired McCollum on October 4, 2009, after results of a drug test revealed McCollum used marijuana. McCollum filed a grievance with Local 527, but on October 6, 2009, the union mailed to McCollum notification of its decision not to represent him in grievance proceedings. McCollum sued Local 527 roughly five and one-half months later, on March 26, 2010, alleging the union breached its duty of fair representation under the LMRA. On June 14, McCollum added an ADEA claim against GENCO and the union. McCollum asserts Local 527 withdrew the grievance on account of his age.

Federal Rule of Civil Procedure 4(m) required McCollum to serve Local 527 with the first or amended complaint by July 24, 2010, 120 days after filing. Fed. R. Civ. P. 4(m) (2007); Fed. R. Civ. P. 6(a)(1)(A) (2009). July 24 was a Saturday, so the Rules allowed McCollum until Monday, July 26, to perfect service. Fed. R. Civ. P. 6(a)(1)(C). The parties agree that McCollum did not perfect service until July 27, 2010.[1]

II. Effect of McCollum's Untimely Service

    A. *Applicable Law*

Local 527 moves to dismiss McCollum's claim under Rule 12(b)(5), asserting process was untimely. *See* Fed. R. Civ. P. 12(b)(5) (2009); *Reliable Tax & Fin. Servs., Inc. v. H&R Block E. Servs., Inc.*, 212 F.Supp.2d 592 (E.D. Va. 2002). The union argues that Rule 4(m), as

---

[1] McCollum faxed Local 527 a copy of the Amended Complaint along with a settlement inquiry on June 14. (Def.'s Mem. in Supp. 10.) McCollum does not argue this fax perfected service. Local 527 and McCollum agree the Amended Complaint was served by hand, presumably with a summons, on July 27, 2010. (Def.'s Mem. in Supp. 10, Pl.'s Mem. in Opp'n 4.)

interpreted by the Fourth Circuit, requires dismissal. McCollum requests the Court extend the deadline for service to July 27, 2010, the day McCollum perfected service.

When a defendant is not served within the 120-day period set by Rule 4, the law of this circuit permits a court to act in one of two ways. Fed. R. Civ. P. 4(m) (2007); *Mendez v. Elliot*, 45 F.3d 75, 79 (4th Cir. 1995). Upon a finding of "good cause," the court must "order that service be made within a specified time." Fed. R. Civ. P. 4(m). In lieu of that showing, the court must dismiss the action without prejudice. *Mendez*, 45 F.3d at 79.[2]

The court can find good cause to extend the service deadline only if the plaintiff made "reasonable and diligent efforts to effect service" within the 120-day period. *United States v. Sea Bay Dev. Corp.*, 2007 WL 1378544 at *5 (E.D. Va. May 8, 2007) (citation omitted). Courts typically find good cause to extend the Rule 4(m) time limit where "external factors . . . stifle a plaintiff's due diligence" in perfecting service. *T&S Rentals v. United States*, 164 F.R.D. 422, 425 (N.D. W.Va. 1996).

Courts in this district have found good cause to extend Rule 4(m)'s deadline where a defendant evaded plaintiff's attempts to perfect service, *Id.*, where a plaintiff readily attempted to, but could not, identify the defendant's home address, *Yongo v. Nationwide Affinity Ins. Co. of*

---

[2] Dicta from the Supreme Court has cast doubt on *Mendez*. *Henderson v. United States*, 517 U.S. 654, 663 (1996) ("[I]n 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120-day period, even if there is no good cause shown.") (citing the Advisory Committee notes). A Fourth Circuit panel has described as "persuasive" the Supreme Court's reading of Rule 4(m), implying that a court should be able to extend the 120-day deadline on grounds other than good cause. *Scruggs v. Spartanburg Reg'l Med. Ctr.*, 198 F.3d 237, 1999 WL 957698 at *2 (4th Cir. Oct. 19, 1999). But the same panel concluded it lacked the power to overturn *Mendez* in lieu of a decision by an *en banc* decision of the Fourth Circuit or an intervening Supreme Court decision. *Scruggs*, 1999 WL 957698 at *2 n. 2.

Some district courts in this circuit, reading *Scruggs* differently, have come to the opposite conclusion. *See, e.g., Lane v. Lucent Techs., Inc.*, 388 F.Supp.2d 590, 569-97 (M.D.N.C. 2005). For example, *DiPaulo v. Potter* made much of the fact that the Fourth Circuit technically decided *Mendez* under Rule 4(j), before the Rules were amended to make Rule 4(m) the governing provision. 570 F.Supp.2d 802, 806-07 (M.D.N.C. 2008). But the Fourth Circuit decided *Scruggs* several years after the current Rule 4(m) was adopted, and the panel assumed *Mendez* still governed courts' power to extend the service deadline, regardless of which provision of the Rules provided that power. Therefore, the law of this circuit remains that a court is not allowed to waive Rule 4(m)'s deadline for any reason other than good cause. Other courts in this circuit agree. *See, e.g., Vander Linden v. Wilbanks*, 128 F.Supp.2d 900, 904 n. 2 (D.S.C. 2000).

*Am.*, 2008 WL 516744 at *8-9 (M.D.N.C. Feb. 25, 2008), and where a stay in proceedings during the 120-day period prevented the clerk from issuing a summons, *Robinson v. Fountainhead Title Group, Corp.*, 447 F.Supp.2d 478, 485 (D. Md. 2006). Evidence of settlement discussions between the parties may support good cause for an extension. *Mendez*, 45 F.3d at 80 (implying that a good-faith attempt to engage in settlement discussions would support a showing of good cause). An attorney's negligent failure to perfect service does not support a showing of good cause. *See Sea Bay Dev. Corp.*, 2007 WL 1378544 at *5.

B. *Analysis*

Since the parties agree McCollum failed to comply with Rule 4(m), the only dispute concerns whether good cause exists to extend the deadline for service. The Court does not find good cause to extend the deadline. McCollum does not argue he made "reasonable and diligent efforts to effect service." *Sea Bay Dev. Corp.*, 2007 WL 1378544 at *5. That Local 527 received a facsimile copy of the Amended Complaint on June 14, 2010, demonstrates McCollum knew where to deliver service. Additionally, McCollum does not argue that Local 527 evaded service, or that "external factors" prevented him from perfecting service. *T&S Rentals*, 164 F.R.D. at 425. McCollum's purported involvement in settlement discussions with GENCO does not bear on his ability to serve process on the co-defendant, Local 527. (*See* Pl.'s Mem. in Opp'n 4-5.) Nor is McCollum's erroneous calculation of the Rule 4(m) deadline relevant to the question; McCollum alone bore the burden of verifying the date upon which service was due. *See Sea Bay Dev. Corp.*, 2007 WL 1378544 at *5.

McCollum points out that he served Local 527 only a day after the expiration of the Rule 4(m) deadline as applied to his complaint. (Pl.'s Mem. in Opp'n 4-5.) This assertion

4

presumably appeals to the Court's discretionary power to extend the deadline, but, on this issue, the Court has no discretionary power. *See Mendez*, 45 F.3d at 79. Therefore, the Court dismisses McCollum's LMRA and ADEA claims against Local 527.

III. Dismissal with Prejudice

    A. *Applicable Law*

Local 527 requests the Court dismiss McCollum's LMRA claim with prejudice, because the statute of limitations governing the claim has expired. Rule 4(m) directs a court to dismiss a claim without prejudice when a plaintiff fails to perfect service. *See* Fed. R. Civ. P. 4(m). The court may dismiss the claim with prejudice, though, if the statute of limitations has run on the claim dismissed under Rule 4(m). *See Akinrinade v. Serv. Am. Corp.*, 211 F.3d 1264, 2000 WL 472907 (4th Cir. Apr. 25, 2000).

A six-month statute of limitations applies to hybrid LMRA claims. *DelCostello*, 462 U.S. at 164; *Foy v. Giant Food, Inc.*, 298 F.3d 284, 291 (4th Cir. 2002). A plaintiff's cause of action under the LMRA accrues, and the statute of limitations begins to run, when the claimant discovers or should have discovered the union chose not to represent the plaintiff in the grievance process. *Gilfillian v. Celanese AG*, 24 Fed.Appx. 165 (4th Cir. Dec. 19, 2001).

    B. *Analysis*

The Court dismisses McCollum's LMRA claim with prejudice. While McCollum's March 26 filing tolled the statute of limitations for the claim at issue in this action, *West v. Conrail*, 481 U.S. 35 (1987), filing a complaint does not toll the statute of limitations for actions a plaintiff might file upon dismissal without prejudice. *See Hilton Int'l Co. v. Union de*

*Trabajadores de la Industria Gastronomica de Puerto Rico*, 833 F.2d 10 (1st Cir. 1987) (holding LMRA limitations period had run when plaintiff re-filed action after court's dismissal without prejudice); *Cannon v. Kroger Co.*, 832 F.2d 303, 306 (4th Cir. 1987) (holding that statute of limitations for LMRA claim is not tolled by filing analogous state-law claim in state court).

The statute of limitations began running on the date McCollum received notice of the union's decision. The pleadings and moving papers do not disclose that date, but that piece of information is probably irrelevant. For, even if McCollum received notice by mail as late as a week after October 1, the limitations period ran on his claim in early April of 2010. Any LMRA claim McCollum were to file after that date based on these facts would be time-barred.

McCollum appears to argue that Virginia's rule allowing a plaintiff six months grace to re-file after a voluntary dismissal saves his claim. *See* Va. Code § 8.01-229(E)(3) (2001); *Yarber v. Allstate Ins. Co.*, 674 F.2d 232, 241 (4th Cir. 1982) (requiring federal courts sitting in diversity to apply § 8.01-229(E)(3)). That argument is incorrect. A federal court need not apply the Virginia rule to a claim involving a federal statute such as the LMRA.

III. Nature of McCollum's ADEA Claim

Local 527 wants the Court to dismiss McCollum's ADEA claim with prejudice as well. Local 527 argues McCollum's ADEA claim against the union is merely a repackaged duty of fair representation claim. If Local 527 is correct, then the ADEA claim is subject to a six-month statute of limitations and therefore time-barred.

A. *Applicable Law*

The duty of fair representation is a judicially-created doctrine that requires a union

certified under the National Labor Relations Act (NLRA) "to serve the interest of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 368 U.S. 171, 177, 183 (1967) (permitting federal courts jurisdiction to hear fair representation claims). *See Jeffreys v. Commc'n Workers of Am., AFL-CIO*, 354 F.3d 270, 273 (4th Cir. 2003). A plaintiff may seek relief under the LMRA for a breach of a union's duty of fair representation, as McCollum does here, even though the source of duty originates in the NLRA. *Vaca*, 368 U.S. at 177.

The ADEA makes it illegal for a "labor organization" to discriminate against an individual because of his age or cause an employer to discriminate against an individual because of his age. 29 U.S.C. § 623(c) (2008). A plaintiff seeking relief under the ADEA must prove age was a but-for cause of his termination. *Bodkin v. Town of Strasburg*, No. 09-2167, 2010 WL 2640461 at *2 (4th Cir. June 29, 2010). The *McDonnell Douglas* framework governs a claim against a union based on circumstantial evidence, whereby a plaintiff must demonstrate that (1) the employer violated the collective bargaining agreement with respect to the employee, (2) the union breached its duty of fair representation by declining to vindicate the employer's breach, and (3) evidence indicates the employee was treated less favorably than others similarly situated on account of his age. *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 882 (9th Cir. 2007); *Nosie v. Assoc. of Flight Attendants—CWA, AFL-CIO*, 2010 WL 2594500 at *9 (D. Haw. June 28, 2010).

B. *Analysis*

Local 527 argues the Court should characterize McCollum's ADEA claim as simply a duty of fair representation claim. According to the union, in an argument that is difficult to

7

understand, the fact that the fair representation claim preexisted the ADEA requires the Court to treat it as subsuming the ADEA claim against the union.

Local 527's argument is incorrect. Generally speaking, a single set of facts can give rise to more than one cause of action, if the elements of the separate causes of action overlap. There is little, if any, support in law for the contention that the LMRA duty of fair representation and the ADEA defy this rule. To the contrary, the duty of fair representation and the ADEA vindicate separate, if incidentally overlapping, interests, thereby justifying Congress's decision to retain them as separate grounds for relief. As the Fifth Circuit indicated long ago with respect to Title VII and fair representation claims, "[t]he comprehensive right of an employee to be represented fairly and in good faith by his exclusive bargaining agent clearly encompasses more than freedom from union discrimination based solely upon race, religion, and sex." *Local Union No. 12, United Rubber, Cork, Linoleum and Plastic Workers of Am., AFL-CIO v. N.L.R.B.*, 368 F.3d 12, 24 (5th Cir. 1966). The same logic applies to fair representation and ADEA claims: these claims vindicate different interests; that they require a common element of proof does not preclude a plaintiff from pursuing both of them.

To that end, the Supreme Court has pointed out that a union member aggrieved by a union decision may seek relief under either the ADEA or pursue a duty of fair representation claim. *14 Penn Plaza LLC v. Pyett*, 129 S.Ct. 1456, 1473 (2009) (noting that a union member aggrieved by submission of his ADEA claim to arbitration, as required by a collective bargaining agreement, could assert a fair representation claim). Other cases have treated a union's breach of its duty of fair representation as separate grounds for a claim under civil rights statutes. *See, e.g., Cooper v. Wyeth Ayerst Lederle*, 106 F.Supp.2d 479, 499 (S.D.N.Y. 2000) (noting that a filing a fair representation claim requires an aggrieved employee to first pursue a union's internal

8

grievance procedure, while he need not do so before pursuing a remedy under Title VII).

Local 527 argues *14 Penn Plaza* supports its contention, but the argument is unavailing at best and confusing at worst. The union points out that the Supreme Court suggested in *14 Penn Plaza* that the union's duty of fair representation arose out of the LMRA and not the ADEA. Indeed the Court did. How the Court's statement does anything but buttress the argument that the LMRA and ADEA permit a plaintiff two causes of action, the Court cannot figure out.

As further support, Local 527 provides two cases from the Western District of Pennsylvania. Local 527 offers language from *Garland v. U.S. Airways, Inc.*, to the effect that the court in that case would merge the plaintiff's ADEA claim into his fair representation claims for statute of limitations purposes. 2006 WL 3692591 at *7 (W.D. Pa. Dec. 12, 2006) ("Plaintiff cannot avoid dismissal of his [duty of fair representation] claim simply by repackaging that claim under the guise of a different cause of action."). *See Opsatnik v. Norfolk Southern Corp.*, 2008 WL 763745 at *13 (W.D. Pa. Mar. 20, 2008). But that court did not explain why one claim precluded the other. It is unclear how the court would explain that, particularly since an ADEA claim is subject to its own limitations scheme requiring a plaintiff to sue within 90 days of receiving a right-to-sue letter from the EEOC. 29 U.S.C. § 626(e) (2009).

Local 527's other major source of support, *Crayton v. Long Island RR*, deals with the situation in which application of the Railway Labor Act's (RLA) mandatory arbitration mechanism precludes federal court jurisdiction over a plaintiff's civil rights claim. 2006 WL 3833114 at *5 (E.D.N.Y. Dec. 29, 2006). The comparison between the LMRA and the RLA, though proper in some contexts, is inapt here: by its terms, the LMRA permits suits against unions in federal district court and contains no provision compelling arbitration. 29 U.S.C. § 185(b) (1947).

## CONCLUSION

For the reasons stated above, the Court GRANTS Local 527's Motion and DISMISSES McCollum's LMRA claim with prejudice. The Court DISMISSES McCollum's ADEA claim without prejudice.

It is SO ORDERED.

> _____/s/_____
> James R. Spencer
> Chief United States District Judge

ENTERED this __7th__ day of December 2010.